UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE

COLONY BEACH & TENNIS CLUB
ASSOCIATION, INC.,

                    Debtor.
_____/

COLONY BEACH & TENNIS CLUB, INC.

                    Appellant,

v.                                         Case No. 8:09-cv-535-T-33
                                                      Bankr. No. 8:08-bk-16972-KRM

COLONY BEACH & TENNIS CLUB
ASSOCIATION, INC.,

                    Appellee.
_____/

## **ORDER**

This matter comes before the Court pursuant to the Notice of Appeal (Doc. # 1) filed by Colony Beach & Tennis Club, Inc. (the "Appellant") on March 23, 2009. The Appellant appeals the bankruptcy court's Order Granting Debtor's Motion to Reject Recreational Facilities Lease entered on December 30, 2008 (B.R. Doc. # 75), as modified by the bankruptcy court's February 12, 2009 Reconsideration Order (B.R. Doc. # 106). This Court has considered the briefs of the parties and the record below and determines that the Findings of Fact and Conclusions of Law of the bankruptcy court should be **AFFIRMED.**

## I. FACTUAL BACKGROUND

Debtor, Colony Beach & Tennis Club Association, Inc., is a nonprofit corporation formed in 1973 whose membership consists of owners of the 237 units at the Colony Beach and Tennis Club, a condominium resort hotel, located in Sarasota County, Florida. (Doc. # 3 at 6). Debtor was formed for the purpose of administering certain aspects of the condominium, including the making and collecting of assessments against the unit owners to pay its own expenses and the expenses of the condominium. (*Id.* at 7).

Colony Beach and Tennis Club, Ltd. ("the Partnership") was formed at the same time to operate and manage the condominium units as rental accommodations for the resort hotel. (*Id.*). Murray J. Klauber is president and principal of Resorts Management, Inc., general partner of the Partnership, and all but five unit owners are limited partners. (*Id.* at 8). The general partner makes all management decisions regarding the operation of the hotel. (*Id.*). The limited partners do not take part in the management of the Partnership. (*Id.*).

The limited partners have agreed to rent their condominiums for eleven months of the year to guests staying at the hotel. (*Id.*). They are entitled to rent-free use of the unit they own for one month out of each calendar year. (*Id.*)

When the condominium was formed, Klauber, through Colony Beach, Inc. ("CBI"), entered into the Recreational Facilities Lease with Debtor, which provided Debtor with the use of certain recreational facilities, including a swimming pool and twelve tennis courts. (*Id.* at 8-9). The agreement had a 99-year term with an annual base rent of approximately $500,000, reduced from $653,000 in a 1984 agreement. (*Id.* at 9). Appellant Colony Beach

& Tennis Club, Inc., is a lessor under the Recreational Facilities Lease along with CBI, William W. Merrill, and Carolyn L. Field as Trustee of the Carolyn Field Family Trust ("the Lessors"). (*Id*. at 3).

Initially, excess cash flow resulting from operation of the hotel was to be distributed to the general partner and the limited partners according to a method and formula set forth in the partnership agreement. (*Id*. at 9). The 1984 agreement between the Partnership, Debtor and other parties provided that these sums would instead be utilized to directly fund certain obligations of Debtor after they were used to satisfy all operational expenses of the Partnership itself. (*Id*.).

In October 2004, the Partnership notified Debtor that the buildings and common areas required major repairs costing approximately $12 million. (*Id*. at 10). More recently, the Partnership notified Debtor that a $2.1 million deficiency would exist for the fiscal year beginning May 1, 2007, requiring a special assessment of Debtor's members. (*Id*.). In April 2007, Resorts Management, Inc., as general partner of the Partnership, filed a complaint against Debtor in state court, seeking (a) damages for breach of the 1984 agreement, (b) declaratory relief requiring Debtor to assess its members for Debtor's obligations not funded by the hotel's operation in 2007 along with the major repair work, and (c) temporary and permanent injunctive relief requiring Debtor to assess the unit owners for the deficiency amounts and repair costs. (*Id*. at 13).

In December 2007, Debtor filed counterclaims in the state court action seeking (a) declaration that the 1984 agreement was *ultra vires* and invalid, (b) an equitable accounting

of the Partnership's operation of the hotel, and (c) damages for breach of the 1984 agreement. (*Id*. at 14). Debtor also filed a third-party complaint against Resorts Management, Inc. and the Lessors under the Recreational Facilities Lease seeking, among other things, declaratory judgment that the Recreational Facilities Lease is unconscionable as a matter of law. *(Id*.).

## II.     **PROCEDURAL POSTURE**

In October 2008, before a trial date was set in the state court action, Debtor filed its bankruptcy petition. (*Id*. at 15). In November 2008, the Partnership filed a Motion for Entry of an Order dismissing the Debtor's Chapter 11 Case (B.R. Doc. # 35), arguing that the unit owners were attempting to use the protections afforded by the Bankruptcy Code to restructure their obligations to the Partnership. The Bankruptcy Court denied the motion without prejudice. (B.R. Doc. # 82).

On November 10, 2008, Debtor filed motions to reject the Partnership Agreement, the 1984 Agreement and the Recreational Facilities Lease, each pursuant to § 365 of the Bankruptcy Code. (B.R. Doc. # 21). Appellant and the Partnership filed an Omnibus Objection to Debtor's Motion to Reject Executory Contracts and Unexpired Leases on December 16, 2008. (B.R. Doc. # 65). Appellant argued that Debtor had failed to establish that its decision to reject was supported by Debtor's sound business judgment. (*Id*. at ¶¶ 38-40).

On December 30, 2008, the bankruptcy court entered an Order Granting Motion to Reject Recreational Facilities Lease ("Rejection Order"). (B.R. Doc. # 75). On January 9,

2009, Appellant filed a motion to reconsider and to modify the Rejection Order (B.R. Doc. # 85). Appellants sought reconsideration of the Rejection Order to the extent that the rejection was to be effective as of the petition date. Appellant argued that Debtor received the benefits and use of the property until the bankruptcy court entered the Rejection Order. (*Id.*). The Bankruptcy Court granted the Lessor's motion in part, modifying its original Rejection Order to establish the effective date of rejection as the date Debtor's Motion to Reject was filed rather than retroactive to the Petition Date. (B.R. Doc. # 106).

On February 23, 2009, Appellant filed its Notice of Appeal of the Rejection Order, as modified by the Reconsideration Order. (B.R. Doc. # 119). Appellant asserts three arguments: (a) that the bankruptcy court erred in granting Debtor's Motion to Reject the Recreational Facilities Lease without requiring Debtor to make an evidentiary showing that rejection would benefit its bankruptcy estate or efforts to reorganize; (b) that the bankruptcy court erred in granting Debtor's Motion to Reject because the rejection is based not upon sound economic reasoning but rather a desire to restructure the parties' business relationship; and (c) that the bankruptcy court erred in making the effective date of the rejection retroactive to the filing date of Debtor's Motion to Reject. (Doc. # 3 at 1-2).

### III. STANDARD OF REVIEW AND RELEVANT AUTHORITIES

This Court reviews de novo the legal conclusions of the bankruptcy court. *In re JLJ, Inc.,* 988 F.2d 1112, 1116 (11th Cir. 1993). This Court reviews the bankruptcy court's findings of fact using the clearly erroneous standard. A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is

left with the definite and firm conviction that a mistake has been committed." *Crawford v. Western Elec. Co., Inc.*, 745 F.2d 1373, 1378 (11th Cir. 1984) (citing *United States v. United States Gypsum Co.,* 333 U.S. 364 (1948)).

Section 365(a) of the Bankruptcy Code permits a debtor to reject unexpired leases and executory contracts subject to bankruptcy court approval. 11 U.S.C. § 365(a). Providing the debtor with the authority to reject executory contracts facilitates the bankruptcy process by providing a mechanism through which economic burdens may be lifted as the debtor reorganizes. *In re Wells*, 227 B.R. 553, 564 (Bankr. M.D. Fla. 1998) (citation omitted).

In order to determine whether to approve a debtor's request to reject an executory contract or unexpired lease, a bankruptcy court applies the business judgment test. *In re Surfside Resorts and Suites*, 325 B.R. 465, 469 (Bankr. M.D. Fla. 2005) (citing *In re Prime Motor Inns*, 124 B.R. 378, 381 (Bankr. M.D. Fla. 1991)). "The business judgment test requires a showing that rejection of the contract will likely benefit the [bankruptcy] estate." *Id*. (citing *In re H.M. Bowness, Inc.*, 89 B.R. 238, 241 (Bankr. M.D. Fla. 1988)). However, the bankruptcy court may not substitute its own judgment for that of the debtor unless the debtor's decision is so manifestly unreasonable that it must be based upon bad faith, whim or caprice. *Id*. (internal quotations and citations omitted).

## IV. ANALYSIS

On December 18, 2008, the bankruptcy court held a hearing on Debtor's Motion to Reject. The record before the bankruptcy court included affidavits of Debtor's president and

treasurer, an audited financial statement of the Partnership, a memorandum stating that the Partnership would cease paying certain expenses, and invoices and payment requests forwarded to Debtor by Resorts Management, Inc. on behalf of the Partnership. (B.R. Doc. # 49, # 58, Ex. A, B and C). The Lease, Partnership Agreement and 1984 Agreement were also part of the record. The bankruptcy court determined that the documentary evidence before it supported Debtor's decision to reject the Recreational Facilities Lease under the deferential review mandated by the business judgment test.

### A. **Evidentiary Hearing**

Appellant argues that the bankruptcy court did not conduct a "meaningful inquiry" into Debtor's Motion to Reject and had no "evidentiary basis" for granting the Motion to Reject. (Doc. # 3 at 27). Appellant asserts that the rejection of the lease benefits not Debtor but the unit owners, and that Debtor's economic hardship could be relieved by simply assessing the unit owners for the amounts due. *(Id.)* Appellant further argues that Debtor's Motion to Reject was based, in part, on Debtor's assertion that the Lease is unconscionable and illegal–an issue that had been presented before the state court and remains unresolved. (*Id*. at 27-28). Appellant asserts that the bankruptcy court should have held an evidentiary hearing to address these issues. (*Id*. at 28).

It is true that although the bankruptcy court defers to the debtor's business judgment, the question of whether to reject an executory contract requires actual consideration by the bankruptcy court. *In re Continental Country Club*, 114 B.R. 763, 767 (M.D. Fla. 1990). "This requires evidence by the [debtor] that rejection of the contract will benefit the estate."

*Id*. However, "the court should give perfunctory approval of the decision subject only to review under the business judgment rule." *In re HM Bowness*, 89 B.R. at 241 (citations omitted).

In the instant case, the bankruptcy court examined the evidence provided by Debtor and found that such evidence supported Debtor's business judgment. Accordingly, the bankruptcy court did not err in granting Debtor's Motion to Reject the Recreational Facilities Lease without conducting an evidentiary hearing.

### B. Basis for Motion to Reject

Appellant further argues that the record demonstrates that Debtor's decision to reject the Recreational Facilities Lease was motivated by an attempt to restructure the unit owners' obligations to the Partnership and thus fails the business judgment test. (Doc. # 3 at 29). Again, Appellant asserts that the rejection of the lease benefits not Debtor but the unit owners, suggesting that "at least some of the Unit Owners are dissatisfied with the rate of return on their investment." (*Id*. at 30). Appellant argues that any claims arising from that dissatisfaction should be brought in another forum. (*Id*. at 31).

Good faith is an implicit prerequisite to filing a bankruptcy petition. *In re Wells*, 227 B.R. at 560 (citation omitted). Although there is no particular test for bad faith, the Eleventh Circuit has affirmed the finding of bad faith based upon a number of circumstantial factors. *Id*. at 561. "However, there is no such thing as 'bad faith' in bringing a bankruptcy case solely for the purposes of rejecting an overly burdensome executory contract." *In re Balboa Street Beach Club*, 319 B.R. 736, 740 (S. D. Fla. 2005) (citations omitted); *see also In re*

*Wells*, 227 B.R. at 562 ("absent other factors, bad faith will not be implied solely because a debtor files in an attempt to reject a financially burdensome contract").

Appellant offers no evidence beyond what is already in the record below, and this Court finds nothing to suggest that the bankruptcy court's findings of fact are clearly erroneous. Accordingly, the bankruptcy court did not err in granting Debtor's Motion to Reject the Recreational Facilities Lease based upon its conclusion that the rejection was warranted to alleviate Debtor's financial burden and would benefit the bankruptcy estate.

### C. **Effective Date of the Rejection**

Finally, Appellant asserts that the effective date of the rejection should be the date of entry of the Rejection Order not the date the Motion to Reject was filed. (Doc. # 3 at 33). Appellant argues that it was deprived of rent due under the Recreational Facilities Lease while Debtor continued to receive the benefits and use of the facilities. (*Id.*)

Section 365 of the Bankruptcy Code provides that a debtor's obligations "arising from and after the order for relief under any unexpired lease of nonresidential real property [continue] until such lease is assumed or rejected." 11 U.S.C. § 365(d)(3). Courts within the Eleventh Circuit have construed this literally, holding that lease obligations continue until rejection actually occurs. *See In re Florida Lifestyle Apparel, Inc.*, 221 B.R. 897, 900 (Bankr. M.D. Fla. 1997) ("charges continue to accrue up to the date rejection actually occurs"); *In re CHS Electronics, Inc.*, 265 B.R. 339, 343-44 (Bankr. S.D. Fla. 2001) (section 365 "requires a debtor to satisfy all postpetition obligations under an unexpired lease of nonresidential real property until the date of rejection").

However, bankruptcy courts, as courts of equity, "may enter retroactive orders of approval and should do so when the balance of equities preponderates in favor of such remediation." *In re Thinking Machines Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995). Because such decisions fall within the bankruptcy court's sound discretion, this Court reviews them only for abuse of discretion. *Id*. Upon due consideration, this Court finds no such abuse of discretion in this case. Therefore, the bankruptcy court did not err in making the effective date of the rejection of the Recreational Facilities Lease retroactive to the filing date of Debtor's Motion to Reject.

Accordingly, it is now **ORDERED, ADJUDGED,** and **DECREED** that the bankruptcy court's Rejection Order entered on December 30, 2008 (B.R. Doc. # 75), as modified by the bankruptcy court's Reconsideration Order entered on February 12, 2009 (B.R. Doc. # 106), is **AFFIRMED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 2nd day of March, 2010.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE